# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KRZYSZTOF DAROWSKI | : | No. 3:15-cv-00803 (MPS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ELZBIETA WOJEWODA | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

### I.    Introduction

Plaintiff, Krzysztof Darowski, brings this action against Defendant, Elzbieta Wojewoda, for failure to pay wages owed by law. Darowski brings claims under the overtime wage provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and the overtime and minimum wage provisions of the Connecticut Minimum Wage Act (CMWA), Connecticut General Statutes §§ 31-58, *et seq.* He seeks his unpaid wages, liquidated damages pursuant to the FLSA, double damages pursuant to the CMWA, and reasonable attorney's fees and costs. (Compl., ECF No. 1 ¶ 1). Wojewoda has filed a Motion to Dismiss, citing insufficient service of process and failure to state a claim. Fed. R. Civ. P. 12(b)(5), (6).

The issues before the Court are: (1) whether the Court should extend the period for service of process; (2) whether Darowski has alleged facts sufficient to state a FLSA claim; and (3) whether the complaint sufficiently alleges grounds on which the statute of limitations for Darowski's FLSA and CMWA claims should be equitably tolled.

For the following reasons, the Motion to Dismiss is DENIED.

### II.    Facts

The following facts are accepted as true for the purpose of deciding this motion. At all times relevant to this matter, Wojewoda owned and operated Huntingtown Farm, a horse-boarding

facility in Newtown, Connecticut. (ECF No. 1 ¶ 7.) From approximately September 6, 2010, until February 9, 2013, she employed Darowski as a "general laborer." (*Id.* at ¶ 9.) Darowski agreed to work a fixed schedule totaling 65 hours per week. (*Id.* at ¶ 14.) His duties were as follows:

> [T]aking care of the horses, the stables, and 30 acres of land, including feeding and grooming the animals, and cleaning and maintaining the paddocks and stables. The plaintiff was also required to mow grass, rake leaves, mend fences, paint, trim trees, and shovel several driveways in wintertime. In addition, the plaintiff was required to perform tasks unrelated to the Huntingtown Farm operation, including the retiling of the defendant's indoor pool.

(*Id.* at ¶ 10.) Because he was "rarely" able to complete his assigned tasks in the allotted time, Darowski worked an average of 71 hours per week. (*Id.* at ¶ 15–16.)

In return for his services, Wojewoda agreed to pay Darowski fixed wages of $550.00 per week. (*Id.* at ¶ 14.) Connecticut's minimum wage was $8.25 per hour throughout Darowski's employment under Wojewoda (*id.* at ¶ 18), and both federal and state law required employers to pay employees an overtime rate for hours worked in excess of forty hours each week (*id.* at ¶¶ 22, 34). Wojewoda did not comply with these laws. (*Id.* at ¶¶ 21–22.)

Darowski remained unaware of his rights under the FLSA and CMWA until May 7, 2015. (*Id.* at ¶ 32.) During his employment, Wojewoda failed to post notices of employee rights as required by federal and state law. (*Id.* at ¶ 11–12.) She also failed to provide Darowski with a sufficient record of his hours worked and wages earned (*id.* at ¶ 13), restricted his ability to leave the facility, and prohibited him from communicating with clientele (*id.* at ¶ 24). Darowski also does not speak or read English. (*Id.*) He alleges that these factors prevented him from learning of the alleged violations of his rights. (*Id.*)

In February 2015, a friend informed Darowski that he might be "eligible for a 'T visa' as a victim of labor trafficking." (*Id.* at ¶ 30.) In March 2015, Darowski met with the International Institute of Connecticut (IICONN) for assistance in filing for a "T visa." (*Id.* at ¶ 31.) On May 7,

2015, an attorney for IICONN informed him that he might have rights to recover unpaid wages. (*Id.* at ¶ 32.) On May 21, 2015, Darowski met with his current attorney, Mariusz Kurzyna, who informed him of his rights under the FLSA and CMWA. (*Id.* at ¶ 33.)

On May 27, 2015, Darowski commenced this action and submitted an application to proceed *in forma pauperis* (IFP). (Mot. Leave Proceed *In Forma Pauperis*, ECF No. 2.) That day, Kurzyna also mailed the following documents to Wojewoda's address: a copy of the Complaint, a copy of all other docketed documents, and a request for waiver of service. (Kurzyna Aff., ECF No. 25-1 ¶ 3.) On June 8, 2015, Kurzyna received an email from Wojewoda's attorney, Daniel Young, stating that his law firm, Wofsey, Rosen, Kweskin & Kuriansky, LLP, was representing Wojewoda and that Young had reviewed the Complaint. (*Id.* at ¶ 4; Pl.'s Mem. Opp. Def.'s Mot. Dismiss, Ex. C, ECF No. 25-4.) On July 9, 2015, Kurzyna asked Young, by phone, whether Wojewoda "was going to waive service." (ECF No. 25-1 ¶ 5.) Young said that Wojewoda had not given him the service waiver forms, and asked Kurzyna to resend them directly to Young. (*Id.*) On July 20, 2015, Kurzyna mailed a second request for waiver of service, this time directly to Young. (*Id.* at ¶ 6.) Wojewoda did not return either request. (*Id.* at ¶ 7.)

On September 1, 2015, Kurzyna called the Court to express that a ruling on the IFP application was "needed to expedite service" because the service deadline was "weeks away." (*Id.* at ¶ 8.) On September 17, 2015, he requested that the Court issue a summons. (Request for Clerk to Issue Summons.) On September 18, 2015, he "sent all the documents necessary to effect service to the U.S. Marshals Service, pending approval of the IFP application," including the USM-285 form. (ECF No. 25-1 at ¶ 9; Summons Returned Executed, ECF No. 13.) That day, the Court issued a summons. (Electronic Summons Issued, ECF No. 10.)

At an undetermined point after September 18, 2015, an individual in the U.S. Marshals office wrote "IFP Granted" on the USM-285 form even though the Court had not yet ruled on the IFP application. (Order, ECF No. 16.) On September 21, 2015, a U.S. Marshal accepted the service documents and formal service procedures were initiated. (ECF No. 13.) On October 23, 2015, Wojewoda's attorney accepted service on his client's behalf—twenty-nine days after the original service deadline. (*Id.*) On November 10, 2015, the Court granted Darowski's request to proceed IFP. (ECF No. 14.)

## III.   Standard

### A.   Rule 12(b)(5) Motion to Dismiss

Valid service is required before a federal court may exercise personal jurisdiction over a defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). It is the plaintiff's burden to prove valid service when a defendant moves to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure. *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). Prior to discovery, a plaintiff may establish personal jurisdiction with a prima facie showing. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). In assessing a motion to dismiss for insufficient service of process, a court must look to matters outside the complaint, such as the steps taken by the plaintiff to effectuate service, to determine whether it has jurisdiction. *Torres v. Gaines*, 130 F. Supp. 3d 630, 635 (D. Conn. 2015).

### B.   Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all of the complaint's factual allegations as true when evaluating a motion to dismiss. *Id.* at 572. The Court must "draw

all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant [a] defendant['s] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010). In assessing a motion to dismiss for failure to state a claim, courts are limited to the complaint, documents attached to or incorporated in the complaint, and matters of which judicial notice may be taken. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

## IV.    Discussion

### A.    Service of Process

Wojewoda moves to dismiss Counts One and Two because she argues that she did not receive personal service until after the deadline for service had passed. Fed. R. Civ. P. 12(b)(5), 4(m). A defendant must be served within 120 days after the complaint is filed.[1] Fed. R. Civ. P. 4(m). If a defendant is not served by the deadline, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

#### 1.    Extension for Good Cause

---

[1] This was the operative rule when this lawsuit was filed on May 27, 2015. An amendment to Federal Rule of Civil Procedure 4(m) shortened the service period to 90 days, effective December 1, 2015. *See* Fed. R. Civ. P. 4(m).

Darowski argues that he has shown good cause for the failure to serve Wojewoda by September 24, 2015—120 days from when he filed the complaint—because he made reasonable efforts to effect service on Wojewoda, and Wojewoda was not prejudiced by the 29-day delay in service. (*See* ECF No. 13.) In the alternative, Darowski argues that a good cause extension is warranted because his IFP status entitled him to rely on the Court to effect service on his behalf.

Courts consider two factors in deciding whether good cause exists: (1) a plaintiff's reasonable efforts to effect service; and (2) prejudice to the defendant from the delay. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Barney Assocs,* 130 F.R.D. 291, 293 (S.D.N.Y. 1990) (citing *Gordon v. Hunt,* 116 F.R.D. 313, 319–21 (S.D.N.Y.), *aff'd,* 835 F.2d 452 (2d Cir.1987) (per curiam), *cert. denied,* 486 U.S. 1008 (1988)). Good cause is usually found only in "exceptional" situations where the plaintiff's failure is due to "circumstances beyond its control." *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999).

### a. Darowski's Efforts to Effect Service

Darowski argues that he made reasonable attempts to effect service. His attorney, Kurzyna, mailed a request for waiver of service to Wojewoda's business (ECF No. 25-1 ¶ 3), sent another to Wojewoda's attorney (*id.* at ¶ 7), contacted the Court to "expedite service" (*id.* at ¶ 8), requested the Court to issue a summons (Request for Clerk to Issue Summons), and sent the documents necessary to effect service to the U.S. Marshal's office (ECF No. 25-1 ¶ 9).

In response, Wojewoda notes that Darowski was aware of the deadline, yet failed to seek a summons until September 17, 2015. (Request for Clerk to Issue Summons.) She cites *Bogle-Assegai v. Connecticut,* 470 F.3d 498, 509 (2d Cir. 2006) (holding that dismissal was appropriate where a plaintiff "made no showing whatever as to any effort" to effect service). That case is distinguishable though, as Darowski has shown he attempted to comply with Federal Rule of Civil

Procedure 4 in several ways, including by providing the U.S. Marshal's office with the documents necessary to effect personal service. (ECF No. 25-1 ¶ 9.)

However, Darowski believed the service deadline was about to pass and took no affirmative steps to initiate service on his own. Ultimately, Wojewoda was only served because of a clerical error. (*See* ECF. No. 16.) Further, Kurzyna believed the deadline was about to pass and failed to request an extension under Rule 6(b). *See Gordon v. Hunt,* 116 F.R.D. 313, 321 (S.D.N.Y.), *aff'd*, 835 F.2d 452 (2d Cir.1987) (per curiam), cert. denied, 486 U.S. 1008 (1988) ("An application for enlargement of time in which to serve might well reflect a plaintiff's diligence in trying to effect service."). Darowski diligently attempted to have the Court serve Wojewoda, but with a seemingly earnest belief that she must be served by September 24, 2015, sought no alternatives.

### b. *Prejudice to Wojewoda from the Delay*

In assessing good cause, courts consider "equitable consideration[s] such as hardship—or lack thereof—to the defendant." *Gordon v. Hunt,* 116 F.R.D. 313, 321 (S.D.N.Y.), *aff'd,* 835 F.2d 452 (2d Cir.1987) (per curiam), *cert. denied,* 486 U.S. 1008 (1988). Rule 4 is "construed liberally" to find personal jurisdiction where the defendant has received actual notice of the action. *Romandette v. Weetabix Co.,* 807 F.2d 309, 311 (2d Cir. 1986). However, actual notice alone is not sufficient to deny a motion to dismiss for improper service. *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978).

Here, Wojewoda received actual notice of the suit twelve days after the complaint was filed. On May 27, 2015, Kurzyna initiated the suit and mailed the summons, Complaint, and request for waiver of service to Wojewoda. (ECF No. 25-1 ¶ 3.) On June 8, 2015, Wojewoda's attorney acknowledged receipt of these materials via email. (*Id*. at ¶ 4; ECF No. 25-4). Darowski

has shown that Wojewoda had actual notice of the action, and the Court construes the requirements of Rule 4 "liberally" in favor of finding personal jurisdiction. *Romandette*, 807 F.2d at 311.

Wojewoda does not deny receiving notice, but maintains that it would be unfair for her to pay for litigation of "expired claims." This argument is without merit. In contending that it is unfair to make her pay for litigation of "expired claims," she assumes Darowski's claims are barred by the respective statutes of limitations. As discussed below, however, Darowski has alleged sufficient facts to show that they are not. *See infra* Part IV.B.3.

Despite Wojewoda's actual notice, it is unclear whether Darowski made reasonable efforts to effect service. As such, the Court declines to grant an extension for good cause on this ground.

### c. Darowski's IFP Status

In the alternative, Darowski argues that he was entitled to rely on the Court to effect service on his behalf. If a plaintiff is approved to proceed IFP, a court "must" order service of the defendant by a U.S. Marshal. Fed. R. Civ. P. (4)(c)(3). However, Darowski had not yet been approved to proceed IFP during the period he asserts the Court bore responsibility for service.

The law favors extending the service deadline for IFP applicants, but almost exclusively addresses the issue in the context of *pro se* litigants. A district court should "take care to protect *pro se* plaintiffs from consequences of confusion or delay attending the resolution of an *in forma pauperis* petition." Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment. In the Second Circuit, a *pro se* plaintiff shows good cause for failure to effect service when that failure is attributable to a pending decision on an IFP application. *E.g.*, *Gonzalez v. L'Oreal USA, Inc.,* 489 F. Supp. 2d 181, 184 (N.D.N.Y. 2007); *Kavazanjian v. Rice*, No. 03-CV-1923 (FB)(SMG), 2005 WL 1377946, at *2 (E.D.N.Y. June 6, 2005); s*ee also Ocasio v. Fashion Inst. of Tech.,* 9 F. App'x

66, 68 (2d Cir. 2001) (summary order) (stating that the *pro se* plaintiff had 120 days to effect service after the district court granted his motion to proceed IFP).

It is unclear whether this proposition extends to a represented plaintiff. *Compare Schweitzer ex rel. Schweitzer v. Crofton*, No. 08-CV-135 DRH ETB, 2010 WL 3516161 (E.D.N.Y. Sept. 1, 2010), *aff'd sub nom. Schweitzer v. Crofton*, 560 F. App'x 6 (2d Cir. 2014) (declining to address whether good cause exists where a represented plaintiff awaiting a decision on his IFP application failed to serve the defendant before the 120-day deadline) *with Romand v. Zimmerman*, 881 F. Supp. 806, 809 (N.D.N.Y. 1995) (stating, with respect to a represented plaintiff, that "[a] complaint is not properly filed until after a decision on whether to proceed *in forma pauperis* has been made").

Here, given the uncertainty over whether the Court should consider that Darowski was represented by counsel, the Court declines to grant a good cause extension on this ground.

## 2. *Discretionary Extension*

"District courts have discretion to grant extensions even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *see also Henderson v. United States*, 517 U.S. 654, 662 (1996) ("[C]ourts have been accorded discretion to enlarge the 120–day period even if there is no good cause shown." (internal quotation marks omitted)). A court may grant an extension on its own. Fed. R. Civ. P. 4(m). In granting a discretionary extension, the court must consider: (1) whether the statute of limitations would bar the re-filed action; (2) whether the defendant had actual notice of the claims; (3) whether the defendant attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by an extension. *Schweitzer ex rel. Schweitzer v. Crofton*, No. 08-CV-135 DRH ETB, 2010 WL 3516161, at *8 (E.D.N.Y. Sept. 1, 2010), *aff'd sub nom. Schweitzer v. Crofton*, 560 F. App'x 6 (2d Cir. 2014).

First, equitable tolling of the respective statutes of limitations would allow for timely re-filing of Darowski's claims, favoring dismissal. *See infra* Part IV.B.3. Second, as discussed above, Wojewoda had actual notice of the suit twelve days after it was filed, favoring an extension. (ECF No. 25-1 ¶ 4; ECF No. 25-4). Third, nothing in the record suggests that Wojewoda attempted to conceal the defect in service, favoring dismissal. Fourth, as addressed above, she would not be prejudiced by an extension, favoring an extension.

The Court considers these factors—two in favor of extension, two in favor of dismissal—along with the jurisprudential preference for adjudication on the merits, *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988), and Wojewoda's receipt of service twenty-nine days after the original deadline, (ECF No. 13). Since Wojewoda does not dispute that the service effected after the 120-day deadline was otherwise proper, the Court grants a discretionary extension of the service period *nunc pro tunc*. *Schweitzer*, 2010 WL 3516161, at *8 (granting 30-day discretionary extension for service); *see also Harper v. NYC Admin. for Children's Servs.*, No. 09 CIV. 2468 (JGK), 2010 WL 23328, at *2 (S.D.N.Y. Jan. 5, 2010) (granting discretionary extension *nunc pro tunc* because there was no evidence that the defendant was prejudiced by a minimal delay).

### B.    Failure to State a Claim Under the FLSA

Wojewoda moves to dismiss the FLSA claim, arguing that Darowski did not establish that he is covered by the statute. In the alternative, Wojewoda maintains that (1) Darowski was an agricultural employee, and is thus exempt from the statute, and (2) Darowski's claims are time-barred.

### 1.    *FLSA Coverage*

An employee is covered by the FLSA if (1) his employer is "an enterprise engaged in commerce," or (2) he is individually "engaged in commerce." 29 U.S.C. § 207(a)(1). Darowski

alleges that he meets the criteria for coverage under both an enterprise theory and an individual theory. (ECF No. 1 ¶ 5.) While he fails to allege facts showing that his alleged employer is "an enterprise" under the FLSA, he does allege sufficient facts for the Court to infer that he is covered as an individual employee under the FLSA.

a.  *Enterprise Coverage*

An "enterprise engaged in commerce" has (1) "employees" who are "engaged in commerce or in the production of goods for commerce, or . . . employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) gross annual revenue of at least $500,000. 29 U.S.C. § 203(s)(1)(A).

Darowski fails to establish enterprise coverage for two reasons. First, the majority of courts have held that an "enterprise engaged in commerce" must have at least two employees engaged in commerce. *See Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 99 n. 7 (2d Cir. 2009); *Lee v. Kim*, No. 12-CV-316 RER, 2013 WL 4522581, at *4 (E.D.N.Y. Aug. 27, 2013) (citing cases). *But see Martin v. Deiriggi,* 985 F.2d 129, 133 n. 2 (4th Cir. 1992) (stating in a footnote that "at least one employee" is sufficient to meet the first element of enterprise coverage). The Department of Labor has also endorsed the multiple-employee interpretation. 29 C.F.R. § 779.238 (stating that an employer is an enterprise if "during the annual period which it uses in calculating its annual sales . . . it regularly and recurrently has at least two or more employees engaged in [commerce]").

Here, Darowski fails to allege the existence of other employees in his Complaint. Further, Wojewoda's memorandum of law twice noted the absence of this allegation. (Def.'s Mem. L. Supp. Mot. Dismiss, ECF No. 20-1 at 14) ("Plaintiff mentions no other employees . . . ."); (*id.* at 15) ("[A] small farm that employs one laborer . . . . "). Darowski did not counter these assertions by seeking to amend his complaint to reflect the existence of other employees or by addressing

this defect in his own memorandum of law. While an employee may be unaware of certain aspects of his employer's business, others, such as the existence of another employee, would be apparent. *See Centeno v. Facilities Consulting Grp., Inc.*, No. 3:14-CV-3696-G, 2015 WL 247735, at *11 (N.D. Tex. Jan. 20, 2015) (holding that employees may not have been able to make specific allegations relating to their employer's revenue, but would have known, and should have alleged, specific information about their job duties relating to "commerce").

Second, Darowski has not established that Wojewoda's business meets the revenue element for enterprise coverage. While he alleges that he was "an employee in an enterprise engaged in commerce," he does not specifically allege that that Wojewoda's business generated at least $500,000 in gross annual revenue. (ECF No. 1 ¶ 5.) Some courts have held that this is fatal to his claim. *See, e.g.*, *Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-06304 MKB, 2014 WL 1011070, at *7 (E.D.N.Y. Mar. 14, 2014) ("Most cases in [the Second] Circuit . . . require that a plaintiff plead the specific fact that the defendant did $500,000.00 or more in annual gross business."); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-04760 CBA CLP, 2013 WL 6021668, at *5 (E.D.N.Y. Nov. 13, 2013) (holding that the plaintiff failed to establish enterprise coverage for one of the four years it sought to recover lost wages, because it failed to plead that the defendant had $500,000 in gross annual revenue in that particular year, even though he had done so regarding the other years); *Traylor v. Dallas Area Habitat for Humanity, Inc.*, No. 3:13-CV-4029-B, 2014 WL 3579810, at *5 (N.D. Tex. July 21, 2014) (holding that the plaintiff failed to establish enterprise coverage because he did not plead that the defendant had at least $500,000 in gross annual revenue, even though he pled that the defendant was "an organization with employees and projects all over the world"). *But see Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (holding that the plaintiff established enterprise

coverage in a default judgment with the allegation that "the activities of the defendants constituted an 'enterprise' within the meaning of . . . the FLSA").

Even if the Court did not require Darowski to plead a specific revenue figure, the Complaint still must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the FLSA context, it is reasonable to believe that an employee would be unaware of facts concerning his employer's revenue, and would thus be unable to allege specific revenue amounts. *See Elfoulki v. Brannons Sandwich Shop, LLC*, No. 14-CV-5964 (PKC), 2016 WL 3542458, at *2 (S.D.N.Y. June 22, 2016) ("[L]ow wage employees may know little about the revenues of their employer."); *Centeno*, 2015 WL 247735, at *11 ("Individual employees are rarely privy to factual specifics concerning their employer's volume of sales for a given year."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). This seems particularly likely where, as here, the employee does not speak or read English. (ECF No. 1 ¶ 24.)

Even if Darowski was unable to allege a revenue figure without discovery or speculation, however, he should be able to plead facts to support an inference about this figure, such as the number of workers Wojewoda employed, the number of horses at the facility, the number of clients served, or pricing information about the services offered. Instead, his only allegations from which the Court can assess the size of the business are that the facility incorporated at least "30 acres of land" (Compl. ¶ 10), housed more than one horse (*see id.*) (indicating that Darowski cared for "horses"), and provided services for multiple clients (*see id.* at ¶ 27) (indicating that "some of the boarders" spoke with Darowski). On this record alone, the Court cannot infer that Wojewoda's business generates at least $500,000 in gross annual revenue.

Therefore, Darowski fails to allege facts showing that he was an employee of "an enterprise engaged in commerce" under the FLSA.

### b. Individual Coverage

An employee may also be covered under the FLSA if he is individually "engaged in commerce." "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). An employee is "engaged in commerce" if he "perform[s] work involving or related to the movement of persons or things . . . among the several States." 29 C.F.R. § 779.103. "The test . . . is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943). His work must be "directly and vitally related to the functioning of an instrumentality or facility of interstate commerce . . . rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). "As a basic rule, if [the plaintiff] did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (internal quotation marks omitted).

Darowski argues that he qualifies for individual coverage under the FLSA for three reasons. First, he states that he "engaged in commerce" by feeding the horses with "feed [that is] most likely shipped directly from the Midwest." (ECF No. 25 at 7.) While the Court cannot consider evidence outside the pleadings at this stage,[2] it may reasonably infer from the Complaint

---

[2] In assessing a motion to dismiss for failure to state a claim, courts may consider only the complaint, documents attached to or incorporated in the complaint, and matters of which judicial notice may be taken. *Kramer*, 937 F.2d at 773. Memoranda of law cannot be considered. *E.g.*, *CourtAlert.com, Inc. v. e-Law, LLC*, No. 12 CIV. 2473 DAB, 2013 WL 4754819, at *8 (S.D.N.Y. Aug. 26, 2013) ("On a Rule 12(b)(6) Motion, the Court cannot consider [the plaintiff's] papers in

that Darowski used tools and supplies that had traveled in interstate commerce. *E.g.*, *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) ("[The plaintiffs] used a number of items—bags, brooms, shovels, pails, scrapers[,] radios[,] books[, and] flashlights . . . some of which undoubtedly moved in interstate commerce."). Even if the Court makes this inference, however, Darowski merely used items that were shipped from another state. An employee who uses items that have traveled across state lines is not "an employee engaged in commerce." *See McLeod*, 319 U.S. at 494 ("[E]mployees who handle goods after acquisition by a merchant for general local disposition are not [engaged in commerce]."); *Reagor v. Okmulgee Cty. Family Res. Ctr.*, 501 F. App'x 805, 810 (10th Cir. 2012) (holding that an employee was not "engaged in commerce" when she handled goods that had traveled in interstate commerce); *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1267 (11th Cir. 2006) (holding that an employee was not "engaged in commerce" when he purchased tools for his job that may have crossed state lines). Here, Darowski did not "engage in commerce" simply by using tools and supplies that were shipped from another state.

Second, Darowski argues that he "engaged in commerce" by caring for horses that may have been owned by out-of-state residents because Wojewoda's facility is located near the Connecticut-New York state line.[3] (ECF No. 25 at 7.)

---

opposition to the Motion to satisfy the pleading requirements . . . ."); *Pollock v. Ridge*, 310 F. Supp. 2d 519, 524 (W.D.N.Y. 2004) ("A memorandum of law is not the appropriate vehicle for putting evidence before the Court.").

[3] Darowski does not allege that Wojewoda's facility is close to New York. However, in considering a motion to dismiss for failure to state a claim, courts may consider matters of which judicial notice may be taken under Rule 201 of the Federal Rules of Evidence. *Kramer*, 937 F.2d at 773. Courts may take judicial notice of a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The Court takes judicial notice that 129 Huntingtown Road,

An employee is not "engaged in commerce" when he provides local services to out-of-state clients. In *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828 (5th Cir. 2007), the plaintiff worked for a motel where he transported out-of-state guests to a variety of local sites. *Id.* at 829. The court held that the plaintiff was not "engaged in commerce" because transporting the guests was not part of a "constant stream" of interstate activity. *Id.* at 830. "That many of the motel guests were out-of-state does not alter the local quality of [the plaintiff's] work." *Id.*

In *Reagor v. Okmulgee Cty. Family Res. Ctr.*, 501 F. App'x 805, 810 (10th Cir. 2012), the plaintiff worked for a shelter that housed victims of crimes. *Id.* at 807. Some of the victims had moved to the shelter from other states. *Id.* The court held that the plaintiff was not "engaged in commerce" because she was not responsible for the out-of-state victims arriving at the shelter; her contact with the victims was "strictly local." *Id.* at 810; *see also Dent v. Giaimo*, 606 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009) (holding that a medical assistant was not "engaged in commerce" where contact with out-of-state patients was local); *Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 525 (D. Md. 2006) (holding that a waitress was not "engaged in commerce" by serving out-of-state guests); U.S. Dep't. of Labor, Wage & Hour Div., Coverage of Hotel Employees Under the FLSA, Wages & Hours P 25150E ("Although a company is engaged in interstate or foreign commerce, this activity does not of itself signify that employees who work at . . . the company are engaged in commerce within the meaning of the FLSA.").

Similarly, courts in the Second Circuit have held that hotel employees are "engaged in commerce" only when they are directly involved in interstate activities, such as taking reservations from guests on interstate telephone calls or ordering supplies that are shipped from other states,

---

Newtown, Connecticut—the address of Wojewoda's facility—is approximately 13 miles from the Connecticut-New York state line.

even though their employers serve interstate travelers. *See, e.g.*, *Ying Shun Zhao v. Sunny 39 Hotel Corp.*, No. 14-CV-1847 JG MDG, 2015 WL 5307716, at *5 (E.D.N.Y. Sept. 10, 2015) (holding that a hotel employee was "engaged in commerce" where his clerical duties required him to "answer phones, collect payment from guests, and on occasion, place orders for hotel supplies"); *Jiao v. Shi Ya Chen*, No. 03 CIV. 0165 (DF), 2007 WL 4944767, at *9 (S.D.N.Y. Mar. 30, 2007) (holding that a janitorial employee at a hotel was "engaged in commerce" because his job "also included taking reservations on a regular basis").

Here, Darowski has alleged that he cared for horses and maintained the grounds at Wojewoda's facility (ECF No. 1 ¶ 10), and that he was otherwise confined to the premises, (*id.* at ¶ 24). The Court cannot infer that he was "engaged in commerce" from local business activity, even if it was in service of out-of-state clients. Further, while Darowski indicates that he spoke with clients who may have lived in another state, the communications appear to be personal in nature, rather than related to "commerce." (*See id.* at ¶ 26–27.)

Third, Darowski argues that he is "engaged in commerce" because "the market for buying and selling these animals is . . . regional and interstate in nature." (ECF No. 25 at 7.) This statement is not in the Complaint, and thus the Court cannot rely on it for purposes of deciding the motion to dismiss. Further, the Complaint does not plead facts to suggest that either Darowski or his alleged employer was participating in "the market for buying and selling" horses. Nonetheless, the Complaint contains sufficient allegations—albeit barely—from which the Court may infer that the horses at Wojewoda's facility were transported out of Connecticut as part of the horse-boarding business, and that Darowski played some role in that transportation, however small. Employees are "engaged in commerce" where they care for animals that are later transported to other states. *See, e.g.*, *Marshall v. Thiele*, No. 76-38, 1978 WL 1759, at *3 (M.D. Pa. Nov. 7, 1978) (holding

that employees of a racing stable "engaged in commerce" where their work was "incident to the actual shipment of horses across state lines"); *Hodgson v. Stockmans Livestock Comm'n Co.*, No. 71-464, 1972 WL 1024, at *1 (W.D. Okla. Nov. 17, 1972) (holding that employees of a livestock stockyard "engaged in commerce" where they "regularly engaged in handling, receiving, caring for and shipping livestock" outside of their state); *Mitchell v. Bowman*, 131 F. Supp. 520, 524 (M.D. Ala. 1954) (holding that employees of a livestock auction market "engaged in interstate commerce" where they were "penning, weighing, tagging, feeding, watering or otherwise handling livestock" that was "subsequently transported or delivered to buyers for transportation in interstate commerce"). The U.S. Department of Labor has echoed this position in the context of show horses. U.S. Dep't. of Labor, Wage & Hour Div., Opinion Letter (April 6, 1967) ("Employees who ship show horses across state lines or arrange for their transportation or do work incidental to such transportation are engaged in commerce.").

Here, as explained above, the Court may infer that residents of New York owned at least some of the horses that Darowski cared for. *See supra* n. 3. Further, the allegation that the defendant's facility was for "boarding" implies a temporary stay at Wojewoda's facility, rather than permanent residence. As such, the Court may draw the reasonable inference that owners took their horses from the facility, and subsequently transported them to New York or to other states— whether for sale, show, or recreation. Because Darowski broadly alleges that he cared for the horses (*see* ECF No. 1 ¶10), it is plausible that he regularly performed work related to their transportation, such as loading the horses onto trailers and otherwise preparing them for shipment, and thus was a part of interstate commerce. While the allegations on this issue are thin, Darowski does allege sufficient facts that he is covered by the FLSA as "an employee engaged in commerce." Of course, the Court expresses no view on whether Darowski will be able to prove these facts.

18

### 2. Agricultural Work Exemption

Wojewoda relies on 29 U.S.C. § 213(b)(12) to argue that Darowski cannot be covered under the FLSA because he performed agricultural work, and is thus exempt from the statute. The FLSA's overtime laws do not apply to "any employee employed in agriculture." 29 U.S.C. § 213(b)(12). There are two categories of agricultural work. "Primary agriculture" is "farming in all its branches" including "the raising of livestock." 29 C.F.R. § 780.105(b). "Secondary agriculture" involves "practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction with 'such' farming operations." 29 C.F.R. § 780.105(c).

It is a defendant's burden to show that an exemption applies.[4] *Walling v. Gen. Indus. Co.*, 330 U.S. 545, 547–48 (1947). Exemptions are construed narrowly, and applied only "to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

Here, Wojewoda fails to carry her burden at this stage for two reasons. First, she fails to establish that the portion of Darowski's work that did not involve care for the horses—his retiling work and his grounds-keeping work—was agricultural. (*See* ECF No. 1 ¶ 10.) Wojewoda concedes that retiling is not agricultural. (ECF No. 20-1 at 17–18). Regarding Darowski's grounds-keeping duties, he was required to "mow grass, rake leaves, mend fences, paint, trim trees, and shovel

---

[4] "A claim of exemption under the FLSA is an affirmative defense." *Dejesus v. HF Mgmt. Servs., LLC*, No. 1:12-CV-1298 ERK RML, 2012 WL 5289571, at *2 (E.D.N.Y. Oct. 23, 2012), *aff'd*, 726 F.3d 85 (2d Cir. 2013). While it is generally inappropriate to address an affirmative defense at the motion to dismiss stage, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). Because Wojewoda's facility is named "Huntingtown *Farm*," and horses may be considered livestock, *see* 29 C.F.R. § 780.120, Wojewoda's agricultural exemption argument is appropriate for consideration at this stage.

several driveways in the wintertime." (ECF No. 1 ¶ 10.) These tasks do not appear to fit the FLSA's definition of "primary agriculture." *See* 29 C.F.R. § 780.105(b). Nor is it obvious that they would be regarded as "secondary agriculture." *See Id.* § 780.105(c). Darowski's grounds-keeping work does not seem to be "incident to or in conjunction with" the care of horses, but rather, separate tasks he was assigned as a "general laborer." (*Id.* at ¶ 9); *see also Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 404 n. 10 (1996) ("The relevant question under the statute . . . is whether the work of the [employees] qualifies as incidental to farming."); *Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 178 (W.D.N.Y. 2008) (finding that employees were not employed in agriculture when they performed general maintenance tasks, even though they were employed in agriculture throughout the rest of their employment). Thus, Wojewoda fails to establish that Darowski's retiling work and grounds keeping work are exempt from the FLSA.

Second, assuming *arguendo* that Darowski's care for the horses was agricultural work, Wojewoda fails to establish that his agricultural and non-agricultural work occurred in different work weeks. The agricultural exemption does not apply when an employee performs agricultural and non-agricultural work in the same week. 29 C.F.R. § 780.11. The Complaint does not provide a basis for the Court to conclude that Darowski cared for the horses during weeks when he did not perform retiling or grounds keeping duties. Therefore, on this limited record, Wojewoda has not established that Darowski is subject to the agricultural exemption of 29 U.S.C. § 213(b)(12).

### 3.  *Equitable Tolling Under the FLSA and CMWA*

Darowski brings claims under the overtime wage provision of the FLSA, and the overtime and minimum wage provisions of the CMWA, for all hours worked during the period of September 6, 2010, to February 9, 2013. Wojewoda moves to dismiss, arguing that the claims are barred by

the respective statutes of limitations.[5] Under the FLSA, an action for overtime violations must be filed within two years "after the cause of action accrued." 29 U.S.C. § 255. A "cause of action accrue[s]" when the defendant "fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b). Similarly, under the CMWA, an action for minimum wage or overtime violations must be filed within two years "after the right of action accrues." Conn. Gen. Stat. § 52-596. A "right of action accrues" "when an employer refuses to compensate an employee according to the terms of an express or implied employment contract." *Warzecha v. Nutmeg Companies, Inc.*, 48 F. Supp. 2d 151, 158 (D. Conn. 1999) (citing *Burns v. Koellmer*, 11 Conn. App. 375, 388, 527 A.2d 1210, 1218 (1987) and *Williams v. Cushman & Wakefield of Connecticut, Inc.*, No. CV 95-0148747 S, 1998 WL 246493, at *2 (Conn. Super. Ct. May 5, 1998)).

Under both statutes,[6] "equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack*

---

[5] A statute of limitations defense is "generally riddled with questions of fact" and is usually not appropriate for decision at the motion to dismiss stage. *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010). However, "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer [Rule 12(b)(6)] motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). Here, Darowski's employment ended more than two years from the filing of the Complaint. (*See* ECF No. 1 ¶ 9.) Absent some form of tolling, his claims would be barred by the respective statutes of limitations. *See* 29 U.S.C. § 255, Conn. Gen. Stat. § 52-596. Therefore, Wojewoda may raise this affirmative defense at this stage.

[6] Courts interpreting the CMWA look to FLSA law for guidance where the statutes are similar. *See Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 693 (D. Conn. 2008); *Roto-Rooter Servs. Co. v. Dep't of Labor*, 593 A.2d 1386, 1390 n. 8 (Conn. 1991) ("[O]ur interpretation of the [CMWA] exemption is aided by federal precedent respecting the meaning and scope of the analogous [FLSA] exemption."). In determining whether equitable tolling applies under Conn. Gen. Stat. § 52-596, courts have considered 29 U.S.C. § 255(a) as an analogous provision of the FLSA. *See, e.g.*, *Asp*, 573 F. Supp. 2d at 697–98; *Matysiak v. Shamas*, No. 3:10-CV-01841-GWC, 2015 WL 4939793, at *3 (D. Conn. Aug. 17, 2015); *Dehua Lin v. Brennan*, No. 3:07-CV-1658 CFD, 2011 WL 5570779, at *4 n. 4 (D. Conn. Nov. 15, 2011).

*Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). It is the plaintiff's burden to show that equitable tolling is warranted. *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir. 1990). A court may grant equitable tolling at its discretion, but must consider whether the plaintiff (1) has acted with reasonable diligence during the period he seeks to have tolled, and (2) has proved that circumstances are so extraordinary that the doctrine should apply. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003), *as amended* (July 29, 2003) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 512 (2d Cir. 2002)).

Darowski argues that the limitations period should be equitably tolled because Wojewoda failed to post notices in the workplace explaining the FLSA and the CMWA, as required by law.[7] (Pl.'s Mem. Opp. Def.'s Mot. Dismiss ECF No. 25 at 4.) A plaintiff may be entitled to equitable tolling of the limitations period where the defendant fails to post adequate notice of its workers' wage rights, and the plaintiff shows that he did not learn of these rights through other means. *See, e.g.*, *Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 698 (D. Conn. 2008) ("[T]he trend regarding the failure to post FLSA notices . . . permits equitable tolling where the plaintiff did not consult with counsel during his employment and the employer's failure to post notice is not in dispute."); *Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012) ("[F]ailure [to post wage and overtime notices] is not by itself sufficient to warrant equitable tolling; plaintiff must also show that she had not received notice of her rights through any other avenue.").

---

[7] Federal regulations require that "[e]very employer . . . shall post and keep posted a notice explaining the Act . . . in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4. Similarly, the CMWA requires that "[e]ach employer . . . shall keep a copy of . . . the regulations issued by the Labor Commissioner posted at the place of employment where it can be read easily by the employees." Conn. Gen. Stat. § 31-66.

In particular, employees with limited English-language skills are unlikely to learn of their FLSA rights other than through their employer. *See, e.g.*, *Dehua Lin v. Brennan*, No. 3:07-CV-1658 CFD, 2011 WL 5570779, at *4 n. 3 (D. Conn. Nov. 15, 2011) ("[F]ailure [to post required notices] is sufficient to warrant tolling, especially when the employees have difficulty speaking English."); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 248, 259–60 (S.D.N.Y. 2008) (granting equitable tolling where defendants failed to post required notices "and made no effort to provide any other form of notice to the [non-English-speaking] plaintiffs about their rights"); *Ramirez v. CSJ & Co.*, No. 06 CIV. 13677 (LAK), 2007 WL 1040363, at *3 (S.D.N.Y. Apr. 3, 2007) (denying motion to dismiss claim as time barred where the defendant who failed to post the required FLSA notices "took advantage of" employees who were "immigrants with few skills and limited education").

Some courts in the Second Circuit have declined to rule on equitable tolling in deciding motions to dismiss, given the limited factual record at this stage. *See, e.g.*, *Mandarino v. Mandarino*, 180 F. App'x 258, 261 (2d Cir. 2006) ("[T]he District Court should not have resolved the fact-specific equitable tolling issue on defendants' motion to dismiss."); *Upadhyay*, 848 F. Supp. 2d at 445 ("The resolution of this issue is thus heavily dependent on the facts of the case and cannot be decided on a motion to dismiss."); *Ayala v. Looks Great Servs., Inc.*, No. 14-CV-6035 ADS SIL, 2015 WL 4509133, at *5 (E.D.N.Y. July 23, 2015) (citing cases). Here, however, as discussed below, Darowski has pled enough facts to support equitable tolling.

Darowski alleges that Wojewoda failed to post the notices required by federal and state law. (ECF No. 1 ¶¶ 11–12.) Further, Darowski states that Wojewoda failed to provide him with a record of hours worked and gross earnings as required by Conn. Gen. Stat. § 31-13a, (*id.* at ¶ 13), restricted his ability to leave the facility, and prohibited him from communicating with clientele,

(*id.* at ¶ 24). In addition, Darowski does not speak or read English. (*Id.*) He contends that these circumstances prevented him from learning about his wage and overtime rights until counsel informed him of them on or around May 7, 2015. (*Id.* at ¶ 32.)

Wojewoda relies on *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 82 (E.D.N.Y. 2012) to argue that failure to post FLSA notices warrants equitable tolling only where it is coupled with "some sort of deception."[8] (Def.'s Reply Br., ECF No. 29 at 2.) Some courts in the Second Circuit apply this requirement. *See Mark v. Gawker Media LLC*, No. 13-CV-4347(AJN), 2016 WL 1271064, at *5 (S.D.N.Y. Mar. 29, 2016) (discussing split within the circuit). While the Court declines to address whether this element is necessary to justify equitable tolling, it notes that by restricting Darowski's ability to speak to others or leave the facility, Darowski plausibly suggests that Wojewoda engaged in such deception, or at least severely restricted his access to information. (ECF No. 1 ¶ 24.)

Wojewoda also maintains that posting the required notices and permitting contact with clientele would not have informed Darowski of his rights because he did not read or speak English. (ECF No. 29 at 4–5.) She cites no authority for this position, and the position is difficult to square with the rulings of several courts in the Second Circuit. *See, e.g.*, *Dehua Lin*, 2011 WL 5570779, at *4 n. 3; *Yu G. Ke*, 595 F. Supp. 2d at 248, 259–60; *Ramirez*, 2007 WL 1040363, at *3.

---

[8] Wojewoda addresses the statutes of limitations, but does not discuss the issue of equitable tolling in her initial memorandum of law—she does so only in reply. "[I]ssues raised only in reply are not properly considered." *Marji v. Rock*, No. 09-CV-2420 CS PED, 2011 WL 4888829, at *2 (S.D.N.Y. Oct. 13, 2011). *But see United States v. Brennan*, 650 F.3d 65, 137 n. 77 (2d Cir. 2011) ("[A]lthough we normally will not consider *issues* raised only in reply briefs, we will consider *arguments* raised in response to arguments made in [an] appellee's brief." (citations omitted)). Nonetheless, the Court will consider Wojewoda's statements on equitable tolling made in her reply brief.

Thus, Darowski alleges facts sufficient for the Court to draw a reasonable inference that equitable tolling of the statute of limitations for his FLSA and CMWA claims is warranted.[9] This ruling does not, of course, prevent the Defendant from raising the statute of limitations issue again after the development of a factual record.

**V.     Conclusion**

For the foregoing reasons, the Motion to Dismiss is DENIED.


IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              August 7, 2016

---

[9] Wojewoda acknowledges that Darowski may be entitled to the three-year limitations period provided for in 29 U.S.C. § 255 on the basis of a "willful violation." Def.'s Mem. of Law in Supp. of Def.'s Mot. to Dismiss at 12–13. Since Darowski did not argue for an extension on this basis and has shown that equitable tolling is warranted, it is unnecessary to decide whether a statutory extension is applicable at this time.