UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KRZYSZTOF DAROWSKI,<br><br>     Plaintiff,<br>v.<br><br>ELZBIETA WOJEWODA, MAREK WOJEWODA, and KARDYNAL ROOFING & SIDING, LLC,<br><br>     Defendants. | No. 3:15-CV-803 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Krzysztof Darowski filed this action against Defendants Elzbieta Wojewoda, Marek Wojewoda, and Kardynal Roofing & Siding, LLC (collectively, "Defendants"), alleging that Defendants failed to pay him all required wages for his work performed for their horse-boarding and roofing businesses. Darowski brings claims for failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, failure to pay overtime and minimum wages in violation of the Connecticut Minimum Wage Act ("CMWA"), Connecticut General Statutes ("Conn. Gen. Stat.") §§ 31-58 *et seq.*, and failure to pay wages on a weekly basis as required by Conn. Gen. Stat. § 31-71b.

On March 1, 2017, Defendants filed a motion for summary judgment on two statute of limitations issues: first, Defendants contend that the undisputed evidence in the record shows that Plaintiff's claims are barred by the applicable statutes of limitations and that he is not entitled to equitable tolling; second, Defendants contend that, to the extent they violated the law, there is no

1

evidence that they did so willfully, and Plaintiff is thus not entitled to FLSA's one-year extension of the statute of limitations for willful violations. (ECF No. 88); *see* 29 U.S.C. § 255(a).[1]

For the reasons set forth below, Defendants' motion for summary judgment is DENIED, as genuine issues of material fact exist as to whether Plaintiff is entitled to equitable tolling under the FLSA and the CMWA. The Court therefore need not consider whether Defendants have met their burden on summary judgment with respect to the issue of willfulness under the FLSA.

## I.    Factual Background

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated.

### A. Defendants' Businesses

Defendants own Huntingtown Farm, an unregistered horse-boarding business in Connecticut. (ECF No. 92-5 at 14-15.) Before owning the horse-boarding business, Ms. Wojewoda owned a commercial cleaning business, which she had registered with the Connecticut Secretary of State. (*Id.* at 8.) As part of the cleaning business, Ms. Wojewoda had two employees whom she paid hourly, by check. (*Id.* at 12.) Ms. Wojewoda paid employment taxes for the cleaning business. (*Id.* at 12.) Marek Wojewoda, Ms. Wojewoda's husband, assisted her in promoting the cleaning business and referring clients to her.  (ECF No. 92-6 at 6.)

Mr. Wojewoda also owns Kardynal Roofing and Siding, and has been running his own roofing and siding business for about 20 years. (*Id.* at 4-5.) Four or five workers typically worked for Mr. Wojewoda's roofing and siding business at any one time. (*Id.* at 8.) Mr. Wojewoda

---

[1] While the Defendants "vigorously deny that Plaintiff worked more than 44 hours in any week of his employment and assert that they paid him in accordance with federal and state minimum wage and hour laws" (ECF No. 89 at 1), their motion for summary judgment is based only on their statute of limitations defense, and does not otherwise address the merits of Plaintiff's claims.

typically contracted with and paid the workers for each discrete job, but at times paid his workers by the hour. (*Id.* at 8-9.) Roofers sometimes performed landscaping work on Defendants' property, including by helping to deepen the Wojewodas' pool. (*Id.* at 14-15.)[2] Mr. Wojewoda denies that the roofers were his employees. (*Id.* at 16.)

After purchasing Huntingtown Farm, Defendants hired two men—before hiring Plaintiff—to work at the horse-boarding business, but both had left by the time Plaintiff began working there. (ECF No. 92-5 at 16.)

### B. Plaintiff Moves to the United States from Poland and Begins Working at Huntingtown Farm in 2010

Plaintiff moved to the United States from Poland in June 2010. (ECF No. 89-1 at 14.) He holds a degree in Plastic Arts from a Polish university. (ECF No. 93 ¶ 8.) After graduating from college, Plaintiff worked as a graphic designer for one to two years in a Polish state-owned fabric business. (*Id.* ¶ 9.) Plaintiff also worked as a self-employed graphic artist and owned a business in Poland for three years before moving to the United States. (ECF No. 89-1 at 14; ECF No. 93 ¶¶ 11-13.)

Plaintiff began working at Huntingtown Farm on September 6, 2010. (ECF No. 93 ¶ 2.) Plaintiff and Ms. Wojewoda agreed that Plaintiff would be paid $550.00 per week and would be provided with a furnished apartment during his employment. (*Id.* ¶ 23.) Plaintiff's tasks included cleaning the horse stables and paddocks and mowing the lawn. (*Id.* ¶ 24.) Plaintiff agreed with Ms. Wojewoda that he would work Mondays to Saturdays, from six in the morning to five in the

---

[2] Plaintiff attaches to his opposition papers a letter from Edras Tasen, an individual who claims to have worked for Mr. Wojewoda from 2008 to 2014. (ECF No. 92-7.) The letter describes an incident in which Plaintiff "tried to help" with a project in which men were deepening the Wojewoda's pool, and describing his impressions of the Wojewodas' farm and Plaintiff's work there. The Court does not consider the letter, which is hearsay, in deciding the motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(2).

afternoon, and would perform some additional work in the stables on Sundays. (ECF No. 89-1 at 43-44.)

Plaintiff often worked in the evenings in addition to the hours he agreed to work with Ms. Wojewoda. (*Id*. at 44.) He would sometimes perform farm maintenance work as late as ten o'clock at night. (*Id*. at 47.) Plaintiff testified that he believed Ms. Wojewoda was aware of his additional evening work because she saw video footage of him working recorded by cameras in the stables. (*Id*. at 44.)

The number of hours Plaintiff worked varied. (*Id*. at 57.) Plaintiff testified that he worked a minimum of ten hours a day on Mondays to Saturdays, plus six hours on Sundays, totaling 66 hours per week, not including the days in which he worked additional hours in the evenings. (ECF No. 89-1 at 57; ECF No. 93 ¶ 47.) Plaintiff neither reported nor kept track of the number of hours he worked each night, but stated that he "kn[ew] how much [he] worked at night, give or take average." (ECF No. 89-1 at 56; ECF No. 93 ¶ 46.)

Plaintiff had a cell phone, computer, and access to the Internet while working for Defendants. (ECF No. 93 ¶ 14.) He kept in touch with family members and friends via cell phone and Skype during his employment. (*Id*. ¶¶ 20-21.) Plaintiff used a Polish/English translator on his phone to communicate with horse boarders at the farm and his friend and later girlfriend Karen Rosa, and relied on family members or friends who spoke both Polish and English to help him communicate with other Americans. (*Id*. ¶ 31.) Plaintiff was also free to leave the farm after work and to have visitors. (*Id*. ¶ 22.) Plaintiff's brother and friends visited him at Huntingtown Farm, and one of Plaintiff's friends stayed overnight with him for two nights in 2011. (*Id*. ¶¶ 15, 17-19, 22.)

Plaintiff was not paid between January and April 2011, and had not been paid back wages for that time period as of June 2011. (ECF No. 92-1 ¶ 3; ECF No. 93 ¶ 4) In June 2011, Plaintiff called a New York attorney whose ad he had seen in a Polish-language newspaper. (ECF No. 92-1 ¶ 4.) He called the attorney "to inquire whether, in light of [his] lack of legal immigration status, [he] should demand payment of money owed to [him] by" Ms. Wojewoda. (*Id.* ¶ 5.) In a conversation that "lasted less than five minutes," the attorney told Plaintiff that he "should demand the money." (*Id.* ¶¶ 6-7.) The attorney did not advise him about his rights to minimum wage or overtime pay. (*Id.* ¶ 8.) Plaintiff denies that this call was "as to his hours and wages," although Ms. Rosa testified that it was her understanding that Plaintiff "consulted a Polish-speaking lawyer about his wages and hours sometime in 2012." (ECF No. 92-4 at 5; ECF No. 93 ¶ 5.) Plaintiff had no other contact with the attorney and does not remember the attorney's name. (ECF No. 92-1 ¶ 9.)

At one point during his employment Plaintiff required dental care. (ECF No. 89-1 at 49.) Ms. Wojewoda refused to take him to see a dentist. (*Id.* at 49-50.) Ms. Wojewoda had previously driven him to the grocery store to buy food, but after Plaintiff asked about getting paid, around the time his pay was withheld, Ms. Wojewoda told him that he would have to walk to the store from then on. (*Id.* at 51-52.) Plaintiff was able to get to the store in order to buy groceries, as Ms. Rosa and other horse boarders began to organize to provide him with rides. (*Id.* at 52-53, 60.)

Ms. Wojewoda testified that she was not aware of any state requirements for running a horse-boarding business or state regulations regarding employer recordkeeping. (ECF No. 92-5 at 15-17.) She did not contact the federal or state Departments of Labor to learn what was required of her as an employer and took no other steps to learn the requirements. (*Id.* at 18-19.) Defendants did not have a poster advising Plaintiff of his rights under state or federal wage payment laws

5

because Ms. Wojewoda "didn't know that by hiring one helper on [her] property, [she] needed to have such a poster." (*Id.* at 19.) She further testified that she "didn't talk to him about" the information that would have been in such a poster or provide the information to Plaintiff by other means, as Plaintiff "had access to the [I]nternet, so he could search for that kind of answer . . . ." (*Id.*) Ms. Wojewoda testified that she reported the wages she paid Plaintiff to the Connecticut Department of Revenue Services and the Internal Revenue Service. (*Id.* at 20.)

### C. Plaintiff Leaves His Job at Huntingtown Farm in Early 2013

In early 2013, Plaintiff left his job at Huntingtown Farm.[3] By the time he left, Plaintiff had received all of the wages he was owed under the terms of his employment agreement with Defendants. (ECF No. 89-1 at 61; ECF No. 93 ¶ 3.)

On February 18, 2013, Plaintiff sent an email to Ms. Rosa "describ[ing] Elizabeths [*sic*] behavior in a few sentences" and explaining "why [he] decided to leave" his job. The email read, in relevant part:

> After several weeks since I had started the job she stopped paying me. It continued for four months. It still would be like this if I hadn't started reminding her about my money. She used to tell me, 'I don't have any money. I've got financial problems.['] After some big effort (I even called Polish lawyer) I received my money.
>
> I already knew she is dishonest and I have to be careful. Mark doesn't know that she didn't pay me, it was my trump card. When I got the money she stopped giv[ing] me lifts to the shop – of course without any reason . . . .
>
> When my mother died I told Karen about it – I called her. The next day morning [*sic*] they jumped down my throat over why I called Karen, why you give me lifts to the shop etc. . . . .
>
> They forbade me to contact with [*sic*] you – they said I was to [*sic*] close with you. When Karen quit the contract, Elizabeth blamed me and took my phone away (it

---

[3] Plaintiff's last day of work at Huntingtown Farm is in dispute. Plaintiff testified that his last day of work was February 18, 2013, while Ms. Wojewoda's deposition testimony suggests that his last day was January 31, 2013. (ECF No. 93 ¶ 2; ECF No. 93-1 at 5.)

> was hers, I was only paying the bills) and she was checking if I have called… Karen. It was far enough. I demanded my money (she owed me some) and I quit. . . .

(ECF No. 89-1 at 70; ECF No. 92-4 at 6-7.) Ms. Rosa sent a private Facebook message that evening to a "Sandy Leslie," including the text of Plaintiff's above email to Ms. Rosa, at Plaintiff's request. (ECF No. 89-1 at 62, 72-73; ECF No. 93 ¶ 6.) Ms. Rosa later clarified in another private message that the text of the email was directed to Leslie. (ECF No. 89-1 at 73.) Immediately after resigning, Plaintiff moved into Ms. Rosa's home and resided with Ms. Rosa and her family, rent-free, through the filing of this lawsuit in May 2015. (ECF No. 89-1 at 85; ECF No. 93 ¶ 7.) Ms. Rosa and her family supported him financially during that time. (ECF No. 89-1 at 85.)

On March 8, 2014, Ms. Rosa reached out to Leslie via private Facebook message again to ask whether Leslie would be "willing to help Krzysztof (Christopher)" by writing a letter of reference on his behalf, which he would "need . . . to secure housing for himself." (ECF No. 89-1 at 74.) The next day, over a year after Plaintiff left Huntingtown Farm, Ms. Rosa sent a message to Leslie asking, "Does Elizabeth need help on her farm? Krzysztof is asking. Personally, I think he is crazy." (ECF No. 89-1 at 68, 75; ECF No. 93 ¶ 32.) Leslie responded, "No she's all set and I agree with you . . . ." (ECF No. 89-1 at 75.)

### D. Plaintiff Meets with an Immigration Attorney Regarding a T Visa in 2015

In 2015, Ms. Rosa made an appointment for Plaintiff to meet with a representative from the International Institute of Connecticut ("IIConn"), a non-profit provider of immigration services, after bringing Plaintiff a brochure describing, in English, the process for obtaining T Nonimmigrant Status (a "T Visa") as a victim of labor trafficking. (ECF No. 89-1 at 64; ECF No. 93 ¶ 33.) Plaintiff contacted IIConn in March 2015 for assistance with applying for a T Visa. (ECF No. 92-1 ¶ 10.) Beginning on April 9, 2015, and continuing over the course of four or five

sessions, Attorney Alicia Kinsman assisted Plaintiff in the process of applying for a T Visa. (ECF No. 92-2 ¶ 3.) Plaintiff was certified for a T Visa on April 11, 2016. (ECF No. 109-1 at 2.)

During their third meeting on May 7, 2015, Attorney Kinsman suggested that Plaintiff consult with a wage and hour attorney and provided him with contact information for Attorney Mariusz Kurzyna, who represents Plaintiff in this case. (ECF No. 92-1 ¶ 11; ECF No. 92-2 ¶ 4.) Attorney Kinsman did not advise Plaintiff about his rights under federal or state wage and hour laws. (ECF No. 92-1 ¶ 12; ECF No. 92-2 ¶ 5.)

### E.  Plaintiff Retains a Wage-and-Hour Attorney Prior to Filing this Lawsuit

On May 19, 2015, Plaintiff discussed his job duties, hours of work, and wages in a phone call with Attorney Kurzyna. (ECF No. 92-1 ¶ 14.) Attorney Kurzyna informed him that he had the right to be paid an hourly rate of at least the Connecticut minimum wage for all hours worked and overtime at the rate of 1.5 times his hourly wage for all hours over forty worked in each week. (*Id*. ¶ 15.) The next day, Plaintiff met with Attorney Kurzyna and signed a representation agreement. (*Id*. ¶ 15.) Plaintiff attests that prior to contacting Attorney Kurzyna, he was not aware of his rights under the FLSA or the CMWA. (*Id*. ¶ 16.)

Plaintiff filed this lawsuit on May 27, 2015. (ECF No. 1.)

## II.   Legal Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute

8

of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011). On summary judgment a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).

**III.    Discussion**

    **A.  Equitable Tolling Under the FLSA and CMWA**

Defendants argue that there is no genuine issue of material fact that could support Plaintiff's claim for equitable tolling of the statute of limitations, and that Plaintiff's claims must be dismissed as time-barred.

The statute of limitations for assertion of wage claims under the FLSA is two years unless the employer acted willfully, in which case the limitations period is three years. 29 U.S.C. § 255(a).[4] An action for overtime violations under the FLSA must be filed within two years "after the cause of action accrued." *Id*. A "cause of action accrue[s]" when the defendant "fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b). Similarly, under the CMWA, an action for minimum wage or overtime violations must be filed within two years "after the right of action accrues." Conn. Gen. Stat. § 52-596. A right of action accrues "when an employer refuses to compensate an employee according to the terms of an express or implied employment contract." *Warzecha v.*

---

[4] The CMWA is similar to the FLSA and ordinarily carries a two-year statute of limitations, though the CMWA contains no extension for willful violations. Conn. Gen. Stat. § 52-596. "The Connecticut Supreme Court has indicated that federal precedent can be used to interpret Connecticut laws that are analogous to provisions contained in the FLSA." *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 677 F. Supp. 2d 544, 560 (D. Conn. 2009) (citing *Roto-Rooter Servs. Co. v. Dep't of Labor*, 219 Conn. 520, 528 n.8 (Conn. 1991)). Therefore, the Court is aided by federal precedent regarding the application of the FLSA's two-year limitations period in applying the CMWA's limitations period.

9

*Nutmeg Cos., Inc.*, 48 F. Supp. 2d 151, 158 (D. Conn. 1999) (citing *Burns v. Koellmer*, 11 Conn. App. 375, 388 (1987)) (internal citation omitted). As Plaintiff's employment ended more than two years before the filing of the Complaint on May 27, 2015, the parties agree that absent tolling or an extension of the statute of limitations, his claims would be barred by the FLSA's and CMWA's respective statutes of limitations.

Under both statutes, "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996); *Asp v. Milardo*, 573 F. Supp. 2d 677, 698 (D. Conn. 2008) (equitably tolling the statutes of limitations under the FLSA and the CMWA). The plaintiff has the burden of showing that equitable tolling is warranted. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). A court has discretion to equitably toll a statute of limitations, but must consider whether the plaintiff (1) acted with reasonable diligence during the period he seeks to have tolled, and (2) proved that circumstances are so extraordinary that the doctrine should apply. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003), *as amended* (July 29, 2003) (internal citation omitted).

In *Veltri v. Bldg. Serv. 32 B-J Pension Fund*, the Second Circuit held that equitable tolling was appropriate in an ERISA action where the defendant pension fund failed to comply with federal regulations requiring it to notify the plaintiff of his right to pursue judicial review in federal court following an adverse decision on his administrative appeal. 393 F.3d 318, 323 (2d Cir. 2004). The Court in *Veltri* found that, in the ERISA context, the defendant's "nondisclosure [had to] be viewed in light of the regulatory notice requirement and of Congress's policy of protecting the interests of pension plan participants by ensuring 'disclosure and reporting to participants' and 'ready access to the Federal courts.'" *Id*. at 324 (quoting the ERISA's Congressional findings and

10

declaration of policy, 29 U.S.C. § 1001(b)). Thus, the Court held that "failure to comply with the regulatory obligation to disclose the existence of a cause of action to the plan participant whose benefits have been denied is the type of concealment that entitles plaintiff to equitable tolling of the statute of limitations." *Id*. "The relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Id*. at 323. The Court nonetheless made clear that "a plaintiff who has actual knowledge of the right to bring a judicial action . . . may not rely on equitable tolling notwithstanding inadequate notice from [the defendant]." *Id*. at 326.  The Second Circuit has since reaffirmed *Veltri* in the context of the Federal Tort Claims Act, further "clarify[ing] that fraudulent concealment is not essential to equitable tolling." *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008) (equitably tolling the statute of limitations in a FTCA action where the defendant failed to disclose that physicians providing services in private hospitals were federal employees).

*Veltri* suggests that Defendants' undisputed failure to comply with their obligations under both the FLSA and the CMWA to post notices in the workplace explaining Plaintiff's rights to minimum wage and overtime compensation is an extraordinary circumstance warranting equitable tolling so long as Plaintiff otherwise lacked actual knowledge of those rights.[5] As in the ERISA context, the statutory and regulatory requirements that employers post notices informing workers of their rights under the FLSA and CMWA suggest "that a reasonable [employee] would not

---

[5] A federal regulation promulgated by the U.S. Department of Labor under the FLSA requires that "[e]very employer . . . shall post and keep posted a notice explaining the Act . . . in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4. The CMWA requires that "[e]ach employer . . . keep a copy of . . . the regulations issued by the Labor Commissioner posted at the place of employment where it can be read easily by the employees." Conn. Gen. Stat. § 31-66.

otherwise be aware of the existence of a cause of action . . . ." *Veltri*, 393 F.3d at 324; *see also Cruz v. Maypa*, 773 F.3d 138, 147 (4th Cir. 2014) (equitably tolling the statute of limitations under the FLSA where the employer failed to post the required notice of workers' rights and the claimant did not retain an attorney or obtain actual knowledge of her rights, observing that "absent a tolling rule, employers would have no incentive to post notice since they could hide the fact of their violations from employees until any relevant claims expired").

Indeed, as discussed in the Court's ruling on Ms. Wojewoda's motion to dismiss (ECF No. 41), some district courts in this Circuit have found that a plaintiff in a FLSA action was entitled to equitable tolling of the limitations period where the defendant failed to post adequate notice of workers' wage rights and the plaintiff did not learn of those rights through other means. *See, e.g.*, *Rescia v. Shamas*, No. 3:10-CV-01841-GWC, 2015 WL 11237633, at *2-3 (D. Conn. Dec. 22, 2015) (finding plaintiff was entitled to equitable tolling where defendant failed to post FLSA notice and the record was silent as to whether plaintiff had knowledge of his right to overtime pay); *Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012) ("[F]ailure [to post wage and overtime notices] is not by itself sufficient to warrant equitable tolling; plaintiff must also show that she had not received notice of her rights through any other avenue."); *Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 698 (D. Conn. 2008) ("[T]he trend regarding the failure to post FLSA notices . . . permits equitable tolling where the plaintiff did not consult with counsel during his employment and the employer's failure to post notice is not in dispute.").[6]

---

[6] Some district courts in the Second Circuit have held that failure to post required notices could be "sufficient to warrant tolling, especially when the employees have difficulty speaking English." *Dehua Lin v. Brennan*, No. 3:07-CV-1658 (CFD), 2011 WL 5570779, at *4 n.3 (D. Conn. Nov. 15, 2011); *see also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 248, 259-60 (S.D.N.Y. 2008) (equitably tolling the statute of limitations where defendants failed to post required notices "and made no effort to provide any other form of notice to the [non-English-speaking] plaintiffs about their rights"). Others have also required, however, that failure to post FLSA notices be

12

Defendants argue that, to the extent any extraordinary circumstances warrant equitable tolling, those circumstances ended when Plaintiff resigned in early 2013, rendering Plaintiff's claims nonetheless untimely. In support of this proposition, Defendants cite the Second Circuit's holding that the "requirements of tolling must be satisfied throughout the period to be tolled" in *Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011), a case concerning equitable tolling under the Antiterrorism and Effective Death Penalty Act. Because the extraordinary circumstance here is the Defendants' failure to comply with an obligation to inform Plaintiff of rights he would not ordinarily otherwise be aware of, however, there is no reason that Plaintiff's termination of his employment should mark an automatic end to the tolling period. The harm from a defendant's violation of an obligation to notify a claimant of his rights does not automatically disappear once the claimant and the defendant part ways, absent some evidence that the claimant learned of his rights after parting ways with the defendant. This is consistent with *Veltri*, where the plaintiff filed suit ten years after he stopped working for the defendant. *See Veltri*, 393 F.3d at 321-22. The Second Circuit's opinion in *Veltri* does not suggest that the plaintiff's change in employment status altered the equitable tolling analysis, which, as noted, was based on the defendant's failure to comply with a notice obligation and the plaintiff's lack of actual knowledge of his rights. *See id.* at 323-34.

Thus, whether Plaintiff is entitled to equitable tolling here hinges on whether he had actual knowledge of his rights during the limitations period. Plaintiff asserts that he became aware of his

---

coupled with "some sort of deception" in order to warrant equitable tolling. *See Mark v. Gawker Media LLC*, No. 13-CV-4347 (AJN), 2016 WL 1271064, at *5 (S.D.N.Y. Mar. 29, 2016) (discussing split within the Circuit); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 82 (E.D.N.Y. 2012) (concluding plaintiff was not entitled to equitable tolling as she did not "demonstrate that [defendant], in addition to failing to post the notice of rights, also engaged in 'some sort of deception' that kept her from understanding and asserting her rights").

rights under federal and state minimum wage and overtime laws for the first time in May 2015, when he spoke with Attorney Kurzyna, one week before filing the Complaint. (ECF No. 92-1 ¶¶ 15-16.) At best for Defendants, questions of fact exist as to whether Plaintiff had actual knowledge of his rights before his initial conversation with Attorney Kurzyna. Plaintiff first contacted an attorney in New York, whose ad he saw in a Polish-language newspaper, in June 2011, after Defendants failed to pay him for work he had performed between January and April 2011. (ECF No. 92-1 ¶¶ 3-5.) But he asserts that his conversation with the attorney "lasted less than five minutes" and concerned only whether it would be wise to demand the money he was owed under his contract with Defendants, given his lack of legal immigration status. (ECF No. 92-1 ¶¶ 6-7.) While this interaction suggests that Plaintiff knew how to contact an attorney and was aware that he had a right to be paid in accordance with his agreement, resolving all ambiguities in Plaintiff's favor, I find that factual questions remain as to whether Plaintiff was aware—or even should have been aware—at that time of his rights to minimum wage, overtime pay, and to be paid on a regular basis in particular.[7]

Moreover, the circumstances surrounding Plaintiff's employment cast doubt on whether he reasonably should have known of his rights under the FLSA and the CMWA. Plaintiff was an

---

[7] Defendants rely heavily on *Patraker v. Council of Envt. of New York City*, No. 02 Civ. 7382 (LAK), 2003 WL 22703522 (S.D.N.Y. Nov. 17, 2003), in which the District Court held that the plaintiff's FLSA claim was time-barred, as the defendants' failure to post the required notice, though "in other circumstances, might result in equitable tolling," did not do so in the factual circumstances of that case. *Id.* at *2. In *Patraker*, the Court concluded that equitable tolling was not warranted because the plaintiff, who had worked for defendant for fifteen years, retained an attorney for the purpose of obtaining advice as to his employment contract. *Id.* But *Patraker* does not establish a rule that any conversation with an attorney is dispositive of the issue of equitable tolling, as Defendants claim. And the facts in the record regarding Plaintiff's consultation with an attorney in 2011 are too murky to warrant a finding that equitable tolling should not apply as a matter of law. Further, the additional facts that support equitable tolling here—Plaintiff's undocumented status, limited English skills, and relative isolation—do not appear to have been present in *Patraker*.

undocumented immigrant at the time of his employment and had come to the United States in June 2010, two months before he began working for Defendants. (ECF No. 89-1 at 14; ECF No. 92-1 ¶ 5; ECF No. 93 ¶ 2.) Plaintiff had limited proficiency in English and testified at his deposition with the aid of an interpreter. He used Polish/English translation services when communicating with horse boarders at the farm and his friend Ms. Rosa, and relied on family members or friends who spoke Polish and English to communicate with others. (ECF No. 93 ¶ 31.) As the only employee at Huntingtown Farm during his employment—who also lived at his place of work—Plaintiff was relatively isolated. On the other hand, Plaintiff appears to have emailed with friends in English, though it is not clear whether he had assistance in writing those emails. (*See* ECF No. 89-1 at 70.) He was allowed to have visitors and had a cell phone, laptop, and access to the Internet. (ECF No. 93 ¶ 14.) And Plaintiff is a relatively sophisticated individual with a college degree and who previously owned his own business in Poland. (*Id.* ¶¶ 8-9, 11-13.)

Additional questions of fact exist as to whether Plaintiff learned of his rights following his resignation in early 2013. Ms. Rosa's apparent assistance of Plaintiff suggests that Plaintiff may have become aware of his rights before May 2015, as Plaintiff was almost certainly less isolated when he moved into her home. Ms. Rosa financially supported Plaintiff, worked to secure a letter of reference for housing on his behalf, and made arrangements for him to meet with immigration counsel, suggesting that she was closely involved in Plaintiff's personal affairs and may have been active in helping Plaintiff understand his legal rights generally. Questions also remain as to why Plaintiff thought he could be eligible for a T Visa as a victim of labor trafficking, if he did not also understand his rights to minimum wage, overtime pay, and payment on a regular basis to have been violated. Whether Plaintiff learned of his rights through his meetings regarding the T Visa also depends on the testimony of Attorney Kinsman, who states that she did not advise him of his

rights under federal and state wage laws but later recommended that Plaintiff consult with a wage-and-hour attorney. (ECF No. 92-2 ¶¶ 4-5.)

In light of the facts discussed above, Plaintiff's assertion that he first learned of his rights in May 2015, and Defendants' failure to put forth evidence demonstrating that Plaintiff did in fact learn of his rights at an earlier time, resolving the question of whether equitable tolling is warranted involves weighing the credibility of witnesses and is therefore inappropriate for determination on summary judgment. *See Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 446 (S.D.N.Y. 2012) (denying summary judgment on issue of equitable tolling where "[r]esolving differing versions of the events into a coherent whole involves assessments of the parties' credibility and choosing between conflicting narratives"). I deny summary judgment with respect to the issue of equitable tolling of the FLSA and CMWA statutes of limitations.

### B. Willfulness

Defendants also argue that there is no genuine issue of material fact that could support Plaintiff's claim that Defendants violated FLSA willfully, and therefore that Plaintiff is not entitled to a one-year extension of the statute of limitations.

As discussed above, the FLSA provides for a three-year statute of limitations for "'a cause of action arising out of a willful violation.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting 29 U.S.C. § 255(a)). "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [statute]." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (internal quotation

marks and alterations omitted). The plaintiff has the burden of proving willfulness under the FLSA. *See Herman*, 172 F.3d at 141.

Because a reasonable jury could conclude that Plaintiff is entitled to equitable tolling, and therefore that none of his claims is time-barred even if the two-year statute of limitations applies, I need not decide whether Defendants have met their burden on summary judgment with respect to willfulness.  The parties are not precluded from raising the issue of willfulness at trial.

## IV.   Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment is DENIED.


IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            December 19, 2017